# NOVEMBER, 1906.

G. A. Welhausen v. J. J. Terrell, Commissioner, et al.

No. 1579.   Decided November 7, 1906.

**School Land—Lease—Purchase—Preference Right.**

A lessee of school land, having the preference right to purchase same during the continuance of the lease, notified the Land Commissioner of his desire to do so, and, the land having been appraised for that purpose, sent in his application, in compliance with the law, but enclosed in an envelope indorsed as an application to buy land which was to come on the market on the expiration of the lease. The Commissioner accordingly did not open the application till that date, and then awarded the land to a higher bidder. Held, that the lessee's preference right to purchase must be exercised before the lease expired, and his sending in an application, so indorsed, was not an exercise of that right, since the Commissioner was not authorized to open and act on it until the date named. (Pp. 151, 152.)

Original application for writ of mandamus against the Commissioner of the General Land Office.

*C. C. Clamp, S. S. Searcy* and *C. C. Thomas,* for relator.

*W. A. H. Miller* and *Rogan & Simmons,* for respondents Petit and Munn.

*Wm. E. Hawkins,* Assistant Attorney-General, for respondent Terrell.

GAINES, Chief Justice.—This is a petition for a writ of mandamus to compel the Commissioner of the General Land Office to award

to the relator, Welhausen, three sections of school land, which he applied to purchase.

The facts necessary to a decision of the case may be stated as follows: The relator was a lessee of the lands in controversy in connection with a number of other sections. The lease expired by its terms on the 18th day of January, 1906, and was in good standing on the 6th day of November, 1905, and so continued until the end of the term. On the day last named the relator, by writing, advised the respondent as Commissioner of the General Land Office that he, the lessee, desired to exercise his preference right to purchase four sections held under his lease, namely, the three now in controversy and one other; and thereupon the Commissioner caused the sections to be inspected and appraised, and notified the relator and the county clerk of the proper county of the value placed thereon. After the notices were received, to-wit, on the 17th of the same month, the relator made separate applications to purchase the four sections at their appraised value. These were made upon the blanks furnished by the Commissioner of the General Land Office for applications for the purchase of the surveyed school lands. They were in compliance with the law in every respect, save that the jurats of the county clerk, before whom the affidavits were made, were not authenticated by his seal of office. As we understand, however, respondents do not seriously contend that the omission of the seal is fatal to the validity of the affidavits. The application for section 60 was enclosed in an envelope endorsed—"Application to buy land, sections 60, A. B. and M., in Lasalle County, on market January 19, 1906." Each of the other applications were enclosed in an envelope with the like endorsement. The envelopes had no other endorsement save that in the left hand corner of each appeared the name and post office of the relator. They were mailed to the Commissioner of the General Land Office and by him received and were not opened until January 20, 1906, the day for opening competitive bids under the statute. The lands having been duly advertised as coming on the market on January 19, 1906, on November 24, 1905, the respondent Munn and one Ben Frazier made out applications in due and legal form, the former for the purchase of sections 64 and 60, the other for section 70 (these being the sections in controversy), and each remitted to the Treasurer one-fortieth of the purchase money of the land applied for by him. Each of these last applications was enclosed in an envelope duly endorsed as required by the law in making applications for lands which are to come on the market at a future date and was duly mailed to the Commissioner of the General Land Office. On January 20, 1906, the Commissioner opened all these envelopes and Munn and Frazier being respectively the highest bidders for the sections sought to be purchased by them, such sections were awarded to them respectively. The relator was awarded the home section applied for by him; which section is not in controversy in this suit. Frazier was originally made a party defendant, but having subsequently sold his section to W. J. Petit, was dismissed from the suit and his vendee made a corespondent.

It is conceded that as lessee of the lands in controversy the relator

had, during the term of his lease, the exclusive right to purchase. On the other hand it is clear, that unless his right was exercised by completing the purchase before the lease expired, his privilege was lost and the sales of the lands were subject to competitive bidding. Therefore the decision of this case depends upon the question, Was the sale to him completed before the termination of his lease? The statute confers upon the lessees the exclusive right to buy the lands subject to the lease during the term thereof; and as a condition provides, in effect, that the lessee who desires to avail himself of the privilege, shall communicate his wishes to the Commissioner of the General Land Office, and that thereupon the Commissioner shall appraise the lands and shall give notice both to him and to the county clerk of the appraisement. The statute also expressly provides that, "after such valuation and notice given and filed in the proper county clerk's office the land shall be subject to sale to the persons aforesaid only, and under the terms of this Act." (Laws 1905, p. 163.) By the words, "and under the terms of this act" is clearly meant that in exercising his preference right to purchase the lessee must make his application, file his affidavit, give his obligation and pay his part of the purchase money as is required of other purchasers. Before the sale can be completed, therefore, the proper application must be filed with the Commisisoner of the General Land Office for his immediate action. When this is done the offer of the State is accepted, and the right of the applicant becomes vested. Until it is done there is no acceptance and no right becomes fixed. Did the relator accept the offer of the State before his lease expired? This depends upon the effect of his endorsement upon the envelope. These endorsements were such as are required by statute to be placed upon envelopes containing applications for lands which are to come upon the market at a future date. The Commissioner is expressly forbidden by statute to open envelopes so endorsed until the second day after the lands shall have come upon the market. Hence the endorsements on relator's envelopes, although not so intended, apprised the Commissioner only that they contained bids for lands to come upon the market at a future day, and made it his duty not to open them until that day had passed. Therefore he had no control over the applications contained in them, until the lease had expired. We are of opinion, that they can not be considered as filed with him until he was authorized to open the enevlopes and act upon their contents. We conclude that by reason of the fact that relator failed to file his applications with the Commissioner in such a manner that the officer was empowered to take action upon them during the existence of the lease, he lost his exclusive right to purchase as lessee.

Therefore the writ of mandamus is refused.

*Mandamus refused.*